# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

<table>
<tr><td>

UNITED STATES OF AMERICA,

               Plaintiff,

       v.

SABATINO PAPARATTO, *et al*.,

               Defendants.

</td>
<td>

Civil. Action No. 21-18571 (JXN)(JSA)


**OPINION**

</td></tr>
</table>

**NEALS**, District Judge

Before the Court is Plaintiff United States of America's ("Government" or "Plaintiff") motion for summary judgment against *pro se* Defendant Sabatino Paparatto ("Paparatto" or "Defendant") pursuant to Federal Rule of Civil Procedure[1] 56. (ECF No. 62.) Paparatto filed two letters in opposition to the motion (ECF Nos. 63, 65). The Government filed a reply. (ECF No. 70.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, the Government's motion is **DENIED** *without prejudice*.

## I.    BACKGROUND

### A.  Factual Background[2]

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[2] Paparatto, who is *pro se*, failed to submit a responsive statement of material facts as required by Local Civil Rule 56.1 (*see* ECF Nos. 63, 65), despite having been provided an opportunity to do so (*see* ECF No. 64). Under the Local Rules, a "responsive statement of material facts" must "address[] each paragraph of the movant's statement, indicating agreement or disagreement." L. Civ. R. 56.1(a). "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." *Id*. However, the Court will afford Paparatto the leeway traditionally afforded to *pro se* litigants, and to the extent that the factual assertions in Paparatto's response letters vary from those in the Government's Rule 56.1 statements, the Court considers those facts to be disputed, and the balance of the Government's factual assertions supported by the record will be deemed uncontested. *See Townsend v. County of*

This case arises from Paparatto's unpaid federal employment and unemployment tax liabilities. The Government seeks to collect the trust fund recovery penalties assessed against Paparatto under 26 U.S.C. § 6672[3] for his failure to pay over to the United States taxes withheld from the wages paid to the employees of Sky High Construction, LLC ("Sky High"). (Am. Compl. 1–2, ECF No. 10.)

In May 2006, Paparatto established Sky High. (Pl.'s Statement of Undisputed Material Facts ("SOF") ¶¶ 4–5, ECF No. 62-2.)[4] Paparatto was Sky High's sole owner, president, and signatory on Sky High's accounts with Bank of America. (*Id.* ¶¶ 6–7.) Paparatto had access to all of Sky High's books and records, including the checkbooks, accounts receivable, invoicing, billing, materials, and payroll. (*Id.* ¶ 10.) Paparatto met weekly with Sky High's bookkeeper to discuss Sky High's finances, what was outstanding, and what was owed. (*Id.* ¶ 8.)

In 2008, Sky High failed to file Form 941 tax returns. (*Id.* ¶ 11.) On January 13, 2009, an Internal Revenue Service ("IRS") Revenue Officer hand-delivered two letters to Sky High: letters 3164 and 1058. (*Id.* ¶ 13.) Letter 3164 informed Sky High that the IRS planned to contact third parties about its outstanding tax liability. (*Id.*) Letter 1058 informed Sky High that the IRS intended to levy its income, bank accounts, property, or rights to property to pay its outstanding taxes. (*Id.*)

On February 6, 2009, the IRS recorded a notice of federal tax lien against Sky High. (*Id.* ¶ 15.) On September 15, 2009, the IRS continued to collect Sky High's outstanding tax liabilities

---

*Mercer*, Civ. No. 22-4960, 2024 WL 866719, at *3 (D.N.J. Feb. 29, 2024) (citing *Folsom v. Super. Ct. of N.J.*, No. 06-1651, 2008 WL 1782236, at *4 (D.N.J. Apr. 17, 2008) (excusing a *pro se* plaintiff's failure to file a statement of material facts and treating the defendants' factual statements as uncontested unless disputed by plaintiff or contradicted by evidence).

[3] 26 U.S.C. § 6672 imposes personal liability on the individual responsible for collecting income tax and social security withholdings from employees' wages, which the individual must hold in trust for the Government, for a willful failure to collect and pay over the tax.

[4] For brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.

and issued a notice of levy to AJD Construction seeking payment of any monies it owed to Sky High. (*Id.* ¶ 16.) A copy of the levy notice was sent to Sky High. (*Id.*) On December 3, 2009, the IRS received a levy payment from AJD Construction. (*Id.*)

On October 7, 2009, an appointed representative began to represent Sky High before the IRS for the tax periods ending September 30, 2006; March 31, 2008; June 30, 2008; September 30, 2008; December 31, 2008; March 31, 2009; June 30, 2009; September 30, 2009; and December 31, 2009. (*Id.* ¶ 17.) A delegate of the Secretary of the Treasury assessed penalties against Paparatto under 26 U.S.C. § 6672, together with statutory additions, interest, and costs, totaling $996,376.52. (*Id* ¶ 2.) Federal tax liens arose from those penalties and attached to Paparatto's present and future property and property rights. (*Id.* ¶ 3.) Plaintiff filed notices of federal tax liens against Paparatto. (*Id.*) Specifically, on October 1, 2013, Plaintiff filed a notice of federal tax lien regarding trust fund recovery penalties against Paparatto for the periods ending June 30, 2008, through December 31, 2009, with the County Clerk of Union County, New Jersey. (*Id.*) Plaintiff refiled the notice on February 7, 2022. (*Id.*)

### 1. The Transfer of Paparatto's Interest in the Real Property

On June 11, 2001, Paparatto and his wife, Rosalinda Paparatto ("Rosalinda"),[5] bought a house in Mountainside, New Jersey ("Real Property") for $400,000. (*Id.* ¶ 21.) By letter dated January 10, 2012, the IRS informed Paparatto that it would assess him with a trust fund recovery penalty for unpaid employment withholding taxes due from Sky High for the tax periods ending March 31, 2008, through December 31, 2010. (*Id.* ¶ 22.)[6] At that time, the liability was for $688,787. (*Id.*) On September 4, 2012, Paparatto conveyed his interest in the Real Property by

---

[5] The Court refers to co-defendants Rosalinda Paparatto and Frank Paparatto individually using their first names as they have the same last name as Defendant Sabatino Paparatto.

[6] The signed return receipt shows that the letter was received on January 13, 2012. (*Id.*)

quitclaim deed to Rosalinda for $1.00. (*Id.* ¶ 23.) After Paparatto transferred his interest in the Real Property, he allegedly had no assets left. (*Id.* ¶ 24.) Paparatto continues to reside at the Real Property. (*Id.* ¶ 25.) By mortgage recorded on December 18, 2012, however, Paparatto signed the mortgage as co-owner of the Real Property. (*Id.* ¶ 26.)

### B. Procedural History

The Government filed this action on October 14, 2021. (*See* Complaint, ECF No. 1.) On March 19, 2022, the Government filed an Amended Complaint naming Paparatto, Rosalinda, Frank, Sussex Bank, and the State of New Jersey, Division of Taxation as parties, as these individuals and entities may claim an interest in the Real Property. (*See* Am. Compl. ¶ 31.) In the Amended Complaint, the Government seeks to reduce to judgment the trust fund recovery penalty assessments (Count I) and to foreclose the federal tax liens against the Real Property (Count II). (*See id.* ¶¶ 9–32.)

On September 27, 2025, the Government moved for summary judgment as to Counts I and II of the Amended Complaint. (Gov't Mot. Summ. J., ECF No. 62.) Paparatto filed a letter dated September 27, 2024, in response to the motion, which lacked the responsive statement of material facts as required by Local Civil Rule 56.1. (*See* Def.'s First Letter, ECF No. 63.) On April 7, 2025, the Court entered an Order providing Paparatto an opportunity to file a responsive statement of material facts by May 7, 2025. (May 7, 2025 Order at 2, ECF No. 64.)[7] On April 15, 2025, Paparatto filed a second letter in response to the Government's motion, but once again, failed to include a responsive statement of material facts. (*See* Def.'s Second Letter, ECF No. 65.) Consequently, on May 20, 2025, the Court issued a Text Order declaring the Government's

---

[7] The Court administratively terminated the motion for summary judgment temporarily until either the filing of a responsive statement of facts or the expiration of the time allowed for the filing of the responsive statement of facts. (*See* May 7, 2025 Order at 2.) Paparatto failed to comply with the Court's Order.

statement of undisputed material facts as unopposed and provided the Government with the opportunity to reply to Paparatto's letters. (May 20, 2025 Order, ECF No. 67.) On June 10, 2025, the Government filed a reply in further support of its motion. (Gov't Reply, ECF No. 70.)

## II.    **LEGAL STANDARD**

Rule 56 provides that the Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 249. A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The moving party has the burden of showing that no genuine dispute of material fact exists. *Catrett*, 477 U.S. at 323. The burden then shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; rather, all reasonable inferences and doubts should be resolved in favor of the nonmoving party. *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

### III.    <u>DISCUSSION</u>

In its motion, the Government seeks a judgment that: (1) the United States has valid tax liens that attach to Paparatto's interest and rights to the Real Property; (2) Rosalinda holds Paparatto's one-half interest in the Real Property as his nominee; and (3) the United States has a right to foreclose its tax liens and apply the proceeds of the sale toward Paparatto's unpaid federal tax debt. (Gov't Mot. Summ. J. at 1–2.) Paparatto, on the other hand, maintains that he had an installment agreement with the IRS, which was wrongfully terminated, and that this suit is improper. (*See generally* Def.'s First Letter; Def.'s Second Letter.) The Court finds that a question of material fact exists with respect to each of the claims at issue, making this case unsuitable for summary judgment at this time.

### A.  Installment Agreement

An agreement between Paparatto and the Secretary of Treasury ("Secretary") (who oversees the IRS) for the payment of tax in installments is governed by 26 U.S.C. § 6159. *United States v. Margolis*, No. 07-4313, 2008 WL 4823599, at *4 (D.N.J. Oct. 31, 2008). The statute authorizes the Secretary "to enter into written agreements with any taxpayer under which such taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that such agreement will facilitate full or partial collection of such liability." 26 U.S.C. § 6159. Once an installment agreement is entered, the Secretary may not unilaterally terminate the agreement except under specified circumstances, which the notice to the taxpayer must detail. 26 U.S.C. §§ 6159(b)(2)–(5). "[W]hile an installment agreement is in effect, the IRS may not refer a case to the Department of Justice for the commencement of a civil action regarding the tax liability covered in the installment agreement." *Margolis*, 2008 WL 4823599, at *4. *See also* 26 U.S.C. § 6331(k)(2)(C) (prohibiting levy to collect tax liability that is the subject of installment agreement

6

during period agreement is in effect); 26 C.F.R. § 301.6331–4(a) (same prohibition on levy); 26 C.F.R. § 301.6331–4(b)(2) (prohibiting referral of a case for litigation against person named in installment agreement if levy prohibited based on existence of installment agreement). In *Margolis*, the Government moved for summary judgment and argued that, *arguendo*, even if the installment agreement with the defendant was terminated improperly, the Court should set aside the circumstances of the termination and find that there was no agreement to preclude the civil litigation. *Margolis*, 2008 WL 4823599, at *4. The Court found that disregarding the circumstances of the termination and granting summary judgment based only on the government's disputed assertion about the lack of an installment agreement, in effect, would "render the taxpayer protections of the statutory and regulatory scheme governing installment agreements meaningless," and insufficient. *Id*. at *5. The Court further found that, if it were to grant summary judgment to the Government by cabining the non-existence of the agreement from the termination, the only remedy for the taxpayer would be a suit for damages under § 7433 as a consequence of any potential violation of § 6159. *Id*. This Court finds *Margolis* directly on point and persuasive.

Paparatto contends that the installment agreement was improperly terminated, then reinstated, and then improperly terminated again. (*See generally* Def.'s First Letter; Def.'s Second Letter.) The Government presented a certification in its reply, stating that the IRS sent Paparatto a notice of intent to terminate the installment agreement.[8] (Som Decl. ¶ 7, ECF No. 70-1.) However, the Government did not submit a copy of either the installment agreement or the notice provided to Paparatto. The Government does not describe the circumstances that resulted in Paparatto's alleged default. Further, the Government does not cite to any evidence to support the contention

---

[8] The Court notes that in its response, the Government states that it is "unclear what relief Paparatto seeks," then reiterates that there was a notice sent, that Paparatto did not appeal it according to their records, and that "[t]he United States contends that the installment agreement was not improperly terminated." (Gov't Reply at 3–4.)

that the Installment Agreement was properly terminated, nor does it address Paparatto's contention regarding the alleged meetings between the IRS representative and Paparatto. In fact, the exhibits submitted by the Government raise genuine issues regarding whether the installment agreement was properly terminated.[9] [10] [11] The circumstances under which the installment agreement was terminated are material to the Government's entitlement to judgment as a matter of law and have been disputed by Paparatto so as to defeat the Government's motion for summary judgment at this time. Consequently, the Court does not reach the issues of whether (1) the Government has valid tax liens that attach to Paparatto's interest and rights to the Real Property; (2) Rosalinda holds Paparatto's one-half interest in the Real Property as his nominee; or (3) the Government has a right to foreclose its tax liens and apply the proceeds of the sale toward Paparatto's unpaid federal tax debt. (Pl.'s Mot. Summ. J. at 1–2.) Accordingly, the Government's motion for summary judgment is hereby **denied without prejudice.**

## IV.  CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment (ECF No. 62) is **DENIED** *without prejudice.* The Government may refile its motion, within thirty (30) days,

---

[9] Exhibit 11—the IRS certificate of assessments and payments against Paparatto for his unpaid trust fund recovery penalties for the tax period ending March 31, 2008—states that the installment agreement is granted and active as of February 27, 2015. (Ex. 11 at 3, ECF No 62-16.) The certificate reflects that payments were made on time each month between the installment agreement date and July 13, 2017. (*Id.* at 3–7.) Two days later, the certificate states, "Third Party Contact Notification Made by Collection." (*Id.* at 7.) Another payment was made in August 2017. (*Id.*) Payments resumed in January 2018 and continued until November 2020. (*Id.* at 7–11.) The Court notes that Exhibit 11 states that the installment agreement was terminated on July 8, 2019, potentially contradicting the Government's assertion that the agreement was terminated in July of 2017. (*Id.* at 9.) In Exhibit 11, all payments made after July 2019 state, "overpayment credit transferred" and are recorded as both a credit and a debit on the account sheet. (*Id.* at 9–11.)

[10] Unlike Exhibit 11, Exhibit 12—the IRS certificate of assessments and payments against Paparatto for his unpaid trust fund recovery penalties for the tax period ending June 30, 2008—shows all payments past July 10, 2019 as a credit against the account. (Ex. 12 at 3–4, ECF No 62-17.)

[11] Meanwhile, Exhibit 14—the IRS certificate of assessments and payments against Paparatto for his unpaid trust fund recovery penalties for the tax period ending December 31, 2008—shows payments as made for September through December of 2017, which are missing from Exhibit 11. (Ex. 14 at 1–4, ECF No 62-19.)

with supplemental documentation concerning the installment agreement and the circumstances that led to its termination. An appropriate Order accompanies this Opinion.

DATED:    3/5/2026

JULIEN XAVIER NEALS
United States District Judge